CARL P. CARSTENSEN, appellant, v. CLINTON COUNTY, IOWA, and BOARD OF SUPERVISORS (members), appellees.

No. 49620.

(Reported in 94 N.W.2d 734)

FEBRUARY 10, 1959.

W. R. Mockridge, of DeWitt, for appellant.

L. L. Jurgemeyer, of Clinton, for appellees.

OLIVER, J.—This is an appeal by plaintiff-landowner from a judgment of Clinton District Court denying his petition to enjoin the Board of Supervisors from cutting down or injuring sixteen large evergreen trees in front of his farmyard, orchard and feed lot and along the secondary road on the west side of his farm. This road runs from DeWitt north about twelve miles, connects two primary highways and carries much traffic which is expected to substantially increase with its improvement. The part of it which abuts plaintiff's farm, runs straight north and south for approximately five miles and is called the Humeston Road.

It had been a 66-foot road, but the Board had adopted plans for its reconstruction which called for an increase in the width of the traveled portion, berms and ditches, and required that the width of the right of way be increased to 86 feet. This was done by procuring a strip 10 feet wide along each side of the original right of way. The trees here in question are in and along the strip on the east side of the road for a distance of 238 feet. The plans of the Humeston project called for a crushed rock surface to be subsequently covered with asphalt. At the time of the trial the project had been completed except for the ditch, etc., along this 238 feet on the east side of the roadway, and the road was open for travel.

Humeston Road is what is known as a federal-aid-secondary road, the plans for reconstructing of which require approval by the State Highway Commission, which has established certain minimum standards conforming to those fixed by the Bureau of Public Roads. The disagreement over the trees had arisen when the Board sought to secure from plaintiff the ten-foot strip of land for additional right of way. Plaintiff testified he told the Board "if they would leave the trees * * * I would move my fences and give them the ground without compensation. They didn't think they could leave the trees because they were afraid the State Highway wouldn't approve it." Thereafter, at plaintiff's request, the State Highway Commission sent an engineer to inspect the trees. Apparently his report resulted in the disapproval by the Highway Commission feared by the Board.

In September 1956 defendant Board prepared to remove the trees. Plaintiff then instituted this suit and was granted a temporary restraining order forbidding such removal. Trial of the case resulted in judgment for defendants and this appeal therefrom by plaintiff. Upon appeal plaintiff relies upon section 314.7, Code of Iowa, 1954 (1958), which states in part:

"Officers, employees, and contractors in charge of improvement or maintenance work on any highway shall not cut down or injure any tree growing by the wayside which does not materially obstruct the highway, or tile drains, or interfere with the improvement or maintenance of the road, and which stands in front of any town lot, farmyard orchard or feed lot, or any ground reserved for any public use."

Error is predicated upon the finding of the court that the trees materially obstructed the highway or interfered with the improvement or maintenance of the road, and the failure to find their destruction would violate Code section 314.7.

Three experienced highway engineers testified for defendants concerning various technical and practical aspects of the reconstruction plans. One of them testified that in the winter season plaintiff's trees would tend to cause snow to pile up on the roadway and, during the morning hours, their shade would lessen the thawing of snow and ice thereon. In his cross-examination one such witness was asked whether in designing a roadway he would take into consideration the Iowa statute (Code section 314.7) for the protection of trees by the wayside. He answered, "Well, sometimes it is impossible to do so to arrive at what you ultimately want to build." He testified also, "Well if we adhere strictly to the question of law there are probably certain shoulder widths and things like that, but those are absolute minimums. They were not out here building the road to serve a few people. We are trying to build a higher type of road, and I don't think those apply." He stated that the trees interfered with the improvement and maintenance of the road and obstructed the ditch.

Another highway engineer testified: "I consider shoulders, fore slope, ditch bottom and back slope as part of the road. I don't believe the fore slope, bottom and back slope can be built to satisfactory specifications with the trees remaining standing. A width of six feet or more for the ditch bottom is desirable from the standpoint of safety, the holding of snow, construction and maintenance."

The trial court found from the evidence "that defendants' plans and specifications for the improvement of that portion of the highway bordering on plaintiff's farm conform to the general plan for the improvement of the entire highway and that said plans are those accepted by qualified engineers experienced in highway construction. They call for an asphaltic concrete surface 22 feet wide placed on a rolled stone base, 26 feet 3 inches in width located on a subgrade 30 feet in width. The plans also provide for a 2 to 1 fore slope, a ditch with a six-foot bottom, and a 1 to 1½ back slope.

"In the formation of the plans, which require an additional

ten feet on each side of the existing right of way, such factors as safety for the driving public, soil context, drainage of surface water, and maintenance work were taken into consideration. There is nothing in the record from which the court may find that the plans and specifications are in error to achieve the improvement of the road as intended.

"The evidence shows that if the trees with their overhanging branches are to remain, the driver of a modern car entering from plaintiff's drive upon the thirty-foot highway when completed will be unable to view approaching traffic at a safe distance without driving his car forward to a position which will place the front bumper of the car approximately 2½ feet upon the thirty-foot surface of the highway. This situation will constitute a hazard to users of the highway and plaintiff's drive.

"The court further finds that if the trees were permitted to stand in their present condition that the overhang of lower limbs would materially interfere with the operation of standard road equipment employed to construct the drainage ditch and gutter slopes. The branches under discussion will likewise interfere with future maintenance of the ditch and gutter slopes in question."

The findings of fact of the distinguished trial court are entitled to substantial weight and the record persuades us they are correct. There is no substantial controversy over the basic legal propositions and most of the authorities cited appear in both briefs. Code sections 306.21 and 471.4(1) empower Boards of Supervisors to widen secondary roads and to take such private properties as are reasonable and necessary for that purpose.

The decision here most nearly in point is Rabiner v. Humboldt County (1938), 224 Iowa 1190, 1194, 1196, 1197, 278 N.W. 612, 614, 615, 116 A. L. R. 89, 92, 94, which considered a statute similar to section 314.7, Code of Iowa, 1954 (1958). That decision states:

"* * * We find that the conclusion of the county authorities that the highway could not be graded and improved to make a standard road except by the removal of the trees is sustained by the record and we may not substitute our judgment for theirs. * * *.

" 'It is a well-known fact of which the Court should take judicial notice that in recent years and at this time, the officers of the State have been and are working to establish and construct a general system of highways of a permanent, uniform and standard character. The requirements of the public in the use of highways are such that it commands a different construction than was required or considered necessary thirty years ago. And we must keep pace with these new conditions and new requirements. The convenience of the individuals must give way to these demands and requirements of the general public. * * *.' "

This decision was followed by Harrison v. Hamilton County (1939), 284 N.W. 456, not reported in Iowa Reports. Other Iowa decisions cited on this point are Bills v. Belknap (1873), 36 Iowa 583; Crismon v. Deck (1892), 84 Iowa 344, 51 N.W. 55, both of which preceded the era of modern highways and are of little assistance here.

Plaintiff's determined effort to save his magnificent trees is not criticized. However, his position cannot be maintained against the interests of the general public. The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.